# National Oil Refining Co. *versus* Bush.

1. A tenant claimed to hold under an old agreement. The landlord denied that the agreement was in force, and notified the tenant that he would eject him in ten days and hold him liable for damages, which notice, three days thereafter, was followed by another notifying him that the landlord considered him a trespasser. The tenant held on for some time thereafter, and then surrendered the premises. In assumpsit for use and occupation, *Held*, that the question, whether the tenant was or was not a trespasser, was for the consideration of the jury.

2. Such an action is not necessarily founded upon a specific contract, written or oral, but upon the use of the premises. The occupant may be in fact a trespasser, but the owner may waive the trespass and recover in assumpsit, and it does not lie with the tortfeasor to defeat him by interposing his own wrong. It was error, therefore, to instruct the jury that they must find some new contract between these parties to rebut the presumption arising from these notices, for that presumption might well be rebutted by the subsequent acts of the parties.

January 13th 1879. Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, WOODWARD, TRUNKEY and STERRETT, JJ.

Error to the Court of Common Pleas, No. 3, of *Philadelphia county:* Of January Term 1878, No. 135.

[National Oil Refining Co. *v.* Bush.]

Assumpsit by the National Oil Refining Company against Van Camp Bush, for the use and occupation of certain premises.

The plaintiffs in the court below declared in assumpsit, filing two counts for use and occupation of certain premises; the first count being in *indebitatus assumpsit* and the second on a *quantum valebat.* To these the defendant pleaded non assumpsit, payment, set-off, and payment with leave, &c., and under his pleas gave notice of special matter: and afterwards, on the trial, withdrew the plea of set-off.

The case was tried twice. On the first trial, there was a verdict for the plaintiffs for $397.56, followed by a motion for a rule for a new trial. A rule was granted, and was afterwards made absolute. On the second trial before Lynd J., by leave of the court, defendant withdrew both his plea of set-off and notice of special matter, and proceeded merely on the plea of non assumpsit.

The facts were these: On December 30th 1873, the plaintiffs made the following offer to defendant:—

"I am willing to give you the refusal of the National Oil Refinery (near Norristown, Pa.), until Monday at noon, January 5th 1874, on the following terms and conditions:

"*You are to put the works in running order to suit your purposes at your own expense,* and to be allowed to use whatever material is on the premises for that purpose; provided that the same can be done without impairing the value or usefulness of the works as they now are. You shall have until *April* 1st 1874 *to experiment,* and if on that date you conclude to abandon the enterprise, *you are to leave the works in an improved condition,* and to pay us one hundred dollars ($100) rent for the occupancy up to that time; but if you wish to continue the business, you shall have the works until January 1st 1875, at a rental of one hundred dollars ($100) per month, with the further privilege of a lease for five years longer, at an annual rent of fifteen hundred dollars from January 1st 1875, payable monthly. You are to have the works insured for the benefit of our company before commencing any work, and to keep them so insured at your expense and cost for five thousand dollars ($5000), and I am to hold the policies; and in case of damage by fire, no rent shall be charged during the rebuilding of the same, provided the business should be interrupted thereby."

The defendant remained in possession until after April 1st 1874, when plaintiffs sought to bind him by a written lease, embracing the limitations of the foregoing offer. Bush alleged that one of the clauses of the proposed lease did not express correctly the agreement as to insurance, and he would not give his assent thereto; and then ensued a series of negotiations, which finally culminated in a notice, dated October 16th 1874, the company claiming that defendant was liable under the terms of the proposed lease. This notice stated that, by virtue of the lease the company had had, since the first

of October, the right to notify him that it would not keep him as tenant after January 1st 1875, and that it then gave him that notice, so as to avoid all question. "But," it added, "if you wish to remain, the company will retain you upon terms to be settled upon now, you to make a proposition first. If you have no proposition to make, the company will propose terms; but this negotiation must not be allowed in any manner to prejudice the position of the company, as refusing to have you for a tenant after January 1st 1875, unless new terms are decided upon."

After this notice, negotiations looking to an adjustment still proceeded, but proved fruitless, and on January 5th 1875, the company, through its attorney, sent the following notice:

"I am authorized and requested by the National Oil Refining Company of Philadelphia, to notify you that, having already given you due notice of their intention to repossess themselves of the premises lately occupied by you as their tenant, near Norristown, they give you ten days' time from the receipt of this letter in which to remove therefrom, and should you have failed to do so at the expiration of this interval named, they will forthwith proceed, by due process of law, to eject you, and will hold you responsible for damages and costs."

And on January 8th 1875, the same attorney sent the following letter:—

"My attention has just been called to the fact that you propose running the stills of the National Oil Refining Company, and to have the policies of insurance endorsed with an assent to your action. I hereby notify you that you are but a trespasser on the premises, and that my clients protest against any action such as you propose, and will hold you in damages therefor."

The negotiations were renewed, and on March 23d, Mr. Schick, as the representative of Bush, addressed the company as follows:

"It is some time since I promised you that in a few days you should hear from me in reference to the rent of the National Oil Refinery. I regret that unavoidable circumstances have occasioned this delay, but I promise that it shall not be much longer. With many thanks for your patience, I remain sincerely yours." ·

Bush had stopped paying the rent. The efforts of the company to agree upon some terms continued until July, when the company brought an action of ejectment against him.

It had, in April 1875, instituted the action now under review, which was in assumpsit, for compensation for the use and occupation of the property in the months of January, February and March previous.

The defence was that the form of the action should have been trespass, and not assumpsit; that, after a notice to quit, a landlord cannot sue for use and occupation of premises held over; and that

7 Norris—22

[National Oil Refining Co. *v.* Bush.]

the notices of October 1874, and January 1875, for ever severed Bush's relation of tenant to the company.

The contention of the company, on the other hand, was that, if a landlord permits the tenant to hold over after the time fixed by the notice to quit, in order that he may negotiate with him for a new letting, and does so negotiate with him, the original contract relation subsists, and the tenant is liable thereon.

In the charge, the court, inter alia, said:

"The plaintiffs must establish a contract that the defendant should occupy the premises as their tenant. Now in what way have they established their assent that he should remain on the premises as tenant under them? Surely the assent of the landlord must, in some way, be shown. It certainly in this case cannot arise from the notice to quit, and the two letters which the plaintiffs, by their counsel, sent the defendant. There is nothing in those papers showing an assent to his remaining. These are notices to him that he is staying against their assent, and without right, and I do not understand that there is any other testimony as to assent or dissent. If, besides the notice to quit, and two letters I speak of, you find there is a difference between the lease they agreed to give, and the one they tendered, and that is now in evidence, then that fact is some evidence to show that they did not intend to hold him as tenant.

"In this case you find a notice to quit October 16th 1874, and that is followed up by two letters addressing him and regarding him as a trespasser, and there is no evidence that after that the plaintiffs assented to his remaining. If you find then that there is no contract, and that the original contract was rescinded by the notice to quit, followed up by two letters, then the form of action is wrong, and the plaintiffs cannot recover. But it is argued that Mr. Schick's letter is evidence to indicate a contract. It may be, but it is certainly not satisfactory evidence of a contract. On its face it is not clear and satisfactory that there was an agreement, but it rather looks to a negotiation for a new contract. · In the face of the notice to quit October 1874, and the two notes of plaintiffs' counsel, and of the statement of Mr. Stevenson here on the stand that no new contract had been made, it would be straining a point to say that this letter of Mr. Schick was evidence of a contract. The point is for you as a matter of fact, but in my opinion it would be in conflict with the testimony to hold this letter as evidence of a contract.

"I say to you that you will remember that Mr. Stevenson has said that negotiations were going on in the time for which compensation is demanded here; but my recollection of his testimony is that these negotiations were for a new agreement—a new contract for rent. You will remember how this was. If the negotiations were for a new contract, then I say that the fact does not help plaintiffs' case, because if they were for a new contract it showed that

[National Oil Refining Co. *v.* Bush.]

the first one had been abrogated. The notice of October 1874, and the notes of plaintiffs' counsel to defendant, are in evidence; after these if there were negotiations, it makes no difference unless they ended in an agreement."

Verdict for defendant, when plaintiffs took this writ, assigning for error the notice of October 16th 1874, offered by defendant, and the portions of the charge noted above.

*Henry Reed* and *William W. Wiltbank*, for plaintiff in error.— The case in 5 W. N. C. 143, between these same parties, for a different portion of the same year, rules this case. This action for use and occupation will lie: Stockton's Appeal, 14 P. F. Smith 58. The court erred when they said that from the date of the letters written by plaintiffs' counsel and the notice to quit there was no evidence that plaintiffs assented to the defendants remaining, and adding that the notes were direct evidence of the plaintiffs' refusal. It was also error to express an opinion that the letter of Schick was no evidence of a contract. The instruction was erroneous also in regard to the effect to be given to the negotiations. The court, in substance, said that if a tenant remained in possession of premises until an ultimate agreement was reached he was not liable for such use except in an action of trespass for damages.

*Rudolph M. Schick* and *George Junkin*, for defendant in error. —The plaintiff in error assumes that this case is decided by Bush *v.* Oil Company, 5 W. N. C. 143, because that case is for another portion of the same year. In this case, however, there was conclusive evidence of the election of the company to treat Mr. Bush as a trespasser, consisting of the two letters which were not in evidence in that case. And in that case there was no evidence that the company had made the election to treat Mr. Bush as a trespasser, except the notice to quit of October 16th 1874.

It appearing, then, by the verdict of the jury, that the landlord has made his election to treat Bush as a trespasser, we submit that they are bound by the election, and cannot afterwards elect to treat him as a tenant and sue in assumpsit: Goddard *v.* Hall, 55 Maine 579; Featherstonhaugh *v.* Bradshaw, 1 Wend. 134.

The language of the learned judge is to be considered with reference to these facts. There is nothing in these facts in common with the case of a tenant remaining over, pending the negotiation of a new agreement. Indeed, the supposition is incompatible with the undisputed condition of affairs. The tenant insists that he is in by his old contract, and the landlord insists that he is in without right, styles him a trespasser, and treats him as such. This state of things continues for two months. The court decides that the tenant has no right to remain. How, then, can a contract be implied. The facts conclusively negative the implication.

The letter of Mr. Schick, under date of April 23d 1875, was written three weeks after this suit was brought, and we are unable to see that any other inference can be drawn from it than that there was negotiation with reference to this suit.

Mr. Justice GORDON delivered the opinion of the court, February 3d 1879.

Undoubtedly the court below was right in submitting to the consideration of the jury, the question whether Bush was occupying the premises in controversy at the sufferance of the Refining Company or as a trespasser merely. If, indeed, as was said in the case between these same parties, reported in 5 W. N. C. 143, the defendant was permitted to remain in the possession of the property, and he did so remain until the plaintiff elected by its writ of ejectment, or otherwise, to regard him as a trespasser, up to that time, it might recover from him the worth of the premises, by the action of assumpsit for use and occupation; but from the time the company made its election to treat him as a trespasser, it could no longer recover from him on the ground of an implied contract; for, the landlord, having thus determined the status of the occupant, there is no room left to presume a contract. It is true, indeed, that in the first place, the tenant cannot shelter himself under such a plea, for it is not for him, but the landlord, to say in what light he shall be regarded, whether as tenant or trespasser; whether the tort shall be waived or not; but when the landlord has once determined this question, the matter is settled, and he must abide by his own decision. It is upon this ground that the case of Goddard *v.* Hall, 55 Maine 579, is put. It was there held, that an action for use and occupation could not be maintained against a disseisor, and that a judgment upon a writ of entry negatived the relation of landlord and tenant. Of like force is the case of Featherstonhaugh *v.* Bradshaw, 1 Wend. 134, which rules that assumpsit will not lie after proceedings to obtain possession, under the statute against a tenant holding over, it appearing by the plaintiff's affidavit, that the holding over was without his assent or permission, hence, his assent could not be implied in the face of his oath to the contrary. And it is therein taken as indisputable, per Sutherland, J., that the action of assumpsit will not lie to recover rent accruing subsequently to the demise laid in a declaration in ejectment. These cases illustrate what we have already said, that the action depends upon the landlord's assent, express or implied, to the tenant's use of the premises, and his election to treat the occupant as a disseisor negatives such assent.

When, therefore, the Refining Company, through its agent, following up its two previous notices, informs Bush, on the 8th day of January, his holding over having then already commenced, that he was but a trespasser, and that he would be held for damages

[National Oil Refining Co. *v.* Bush.]

accordingly, there was something to show that the company did not assent to his occupancy of the premises, and that it had determimed to treat him as a disseisor. Hence, we repeat there was something to submit to the jury; something from which the jury might have found a verdict for the defendant.

Nevertheless, whilst this is so—whilst we agree that the question, as to whether Bush was or was not a trespasser, was one calling for the consideration of a jury, yet we cannot but think that the court was wrong in this, that it charged, inter alia, "But in this case you find a notice to quit of October 16th 1874, and that is followed up by two letters, addressing him, and regarding him as a trespasser; and there is no evidence that after that the plaintiffs' assented to his remaining." It does not follow that, notwithstanding the three several notices and the threat to treat him as a trespasser, the company did not, after all, permit him to remain on the premises pending the negotiations for a new lease. That he did hold over, and that the plaintiff did not institute adversary process, immediately after the last notice, are some evidence that he was there holding at sufferance. Then the fact that negotiations for a new lease were pending between the parties, especially if taken in connection with the letter of Mr. Schick, the attorney of Bush, is well nigh conclusive of the fact that he remained in possession of the property by permission, and not as a disseisor.

Besides it was error to set the jury upon a hunt after a new contract of lease; such contract was not necessary to the maintenance of the action; it is not necessarily founded upon a specific contract, written or oral, but upon the use of the premises. The occupant may be in fact a trespasser, but the owner of the tenement may waive the trespass and recover in assumpsit, and it does not lie with the tortfeasor to defeat him by interposing his own wrong. To tell the jury, therefore, that they must find some new contract between the parties, in order to rebut the presumption arising from the notices, was error, for that presumption might well be rebutted by the subsequent acts of those parties.

The judgment is reversed, and a *venire facias de novo* ordered.